Filed 6/2/26  P. v. Duran CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085261 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD301896) |
| ALBERTO DURAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed as modified.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted Alberto Duran of evading an officer with reckless driving and possession by a felon of a firearm and ammunition. On appeal, Duran claims that his firearm and ammunition possession charges are unconstitutional. Duran further contends that the jury, rather than the trial court, should have determined whether Penal Code[1] section 654's ban on double punishment applied to the weapon and ammunition possession charges and whether the evasion offense should have been punished as a misdemeanor. Duran also argues that the trial court erred in finding section 654 inapplicable to his possession charges and that he is entitled to an additional day of custody credit. We agree that the trial court should have stayed punishment of the ammunition possession count under section 654 and that Duran deserves one more day of custody credit. We modify the judgment accordingly but otherwise reject Duran's contentions. The judgment is affirmed as modified.

# II. BACKGROUND

In December 2023, Detective Nick Kelbaugh was surveilling a Toyota RAV4 recently involved in a homicide. After observing the RAV4's lights flicker suggesting the vehicle had been remotely unlocked, Detective Kelbaugh saw an individual carrying cleaning supplies approach the RAV4, as if to clean it. That individual came from a Lexus that would later be identified as Duran's car. As detectives approached the person with the cleaning supplies, the Lexus pulled away from the curb. Detective Kelbaugh followed in his unmarked vehicle as Duran drove away in the Lexus.

Momentarily losing sight of the Lexus, the detective next saw Duran standing outside the now parked Lexus. Detective Kelbaugh, along with a

---

[1] All further undesignated statutory references are to the Penal Code.

uniformed officer Jonathan Wiese who arrived in a marked police car, approached Duran. Detective Kelbaugh activated his car's lights and sirens. Duran got into his own car and threw away the key to the RAV4. Duran initially drove away from the officers, but then abruptly turned around and headed straight for them.

Officer Wiese activated his lights. Detective Kelbaugh turned to avoid a collision, and Duran sideswiped Detective Kelbaugh's vehicle as he drove past the officers. Officer Wiese pursued Duran with his sirens and lights on, and using the police car's loudspeaker, ordered Duran to pull over. Other patrol cars joined the pursuit, as Duran continued driving through residential streets, running stop signs and red lights, exceeding the speed limit, and driving on the wrong side of the road.

Duran continued fleeing the officers on the freeway, driving over 130 miles per hour, weaving in and out of traffic and driving on the shoulder. After about 20 minutes, officers were able to surround Duran, concluding the chase. Duran did not appear scared when he exited his vehicle, and officers arrested him. Officers searched Duran's house the following day, finding a small, loaded firearm in his bedroom.

The San Diego District Attorney's Office charged Duran with felony evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (b); count 1), and possession of a firearm and ammunition by a felon (§ 29800, subd. (a)(1), 30305, subd. (a)(1); counts 2–3). Duran had a prior 2015 conviction for driving under the influence (Veh. Code, § 23153, subd. (a)) with enhancements for personally inflicting great bodily injury (§ 12022.7, subd. (a)) and multiple victims (Veh. Code, § 23558), which prosecutors alleged as a prior strike.

3

At the 2024 trial, Duran testified that Detective Kelbaugh "T-boned" him and that he fled because he was scared. Duran also denied both possessing the gun found at his house and that he discarded the RAV4 key.

The jury found Duran guilty of all three counts. After admitting his prior strike conviction, Duran filed a *Romero*[2] motion requesting that the court dismiss it. The trial court denied the motion as to count one but granted it as to counts 2 and 3.

The trial court sentenced Duran on the evading offense, imposing the low 16-month term, doubled to 32 months for the prior strike. The trial court also imposed a consecutive 8 months for the firearm possession, consisting of one-third the midterm. Determining that section 654's ban on double punishment did not apply, the trial court imposed a consecutive 16-month low term for the ammunition possession. The trial court awarded Duran one day of custody credit based on the day of his arrest. Duran's timely appeal followed.

## III. DISCUSSION

### A. *California's Felon Dispossession Laws Are Constitutional*

Duran argues that section 29800, subdivision (a)(1), and section 30305, subdivision (a)(1), violate the Second Amendment to the United States Constitution. He claims the statutes are facially invalid. Duran further contends the laws are unconstitutional as applied to him because he had a very small handgun in his private residence, his prior felony conviction was not violent, and he completed his sentence and probation for that offense. We disagree.

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

1.     Standards of Review

Duran did not assert his Second Amendment claims in the trial court. Nonetheless, a defendant may raise a facial constitutional challenge for the first time on appeal, which we independently review. (*People v. Gomez* (2025) 110 Cal.App.5th 419, 437.)

Duran's as-applied constitutional challenge is forfeited. (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.) However, we will assess Duran's claim that the failure to raise the issue constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation " 'fell below an objective standard of reasonableness under prevailing professional norms,' " and (2) " 'resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.)

2.     Analysis

"When firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.' [Citation.] A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.' " (*United States v. Rahimi* (2024) 602 U.S. 680, 681.) Applying that standard in *People v. Anderson* (2024) 104 Cal.App.5th 577, 586–600 (*Anderson*), the First District Court of Appeal found that sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1), are facially valid under the Second Amendment. Several California courts of appeal have come to the same conclusion. (See, e.g., *People v. Richardson* (2025) 108 Cal.App.5th 1203, 1212; *People v. Gomez,*

5

*supra,* 110 Cal.App.5th at p. 439; *People v. Bey* (2025) 108 Cal.App.5th 144, 162.) We agree with the reasoning of these cases, and we reject Duran's claim that they were wrongly decided. Accordingly, Duran's facial challenge fails.[3]

Turning to Duran's as-applied challenge, we first note that prohibitions "on the possession of firearms by 'felons . . .' are 'presumptively lawful.' " (*United States v. Rahimi, supra,* 602 U.S. at p. 682.) We also disagree that Duran's prior felony was nonviolent. That felony included an enhancement for personally inflicting great bodily injury (§ 12022.7, subd. (a)), making it a " 'violent felony' " under California law. (§ 667.5, subd. (c)(8).) Dating back to colonial times, "[l]egislatures disarmed whole classes of people they considered dangerous." (*Anderson, supra,* 104 Cal.App.5th at p. 591; see also, *United States v. Duarte* (9th Cir. 2025) 137 F.4th 743, 760 ["our historical tradition reveals that legislatures were permitted to categorically disarm those they deemed dangerous without having to perform 'an individualized determination of dangerousness as to each person in a class of prohibited persons.' "].)

In any event, under "early American disarmament measures[,] . . . individuals were disarmed as a preventative measure when the law assessed

---

[3]  We note that Courts of Appeal within our state are divided on whether felons fall within the definition of "the People" who enjoy a constitutional right to keep and bear arms under the Second Amendment. (Compare *People v. Alexander* (2023) 91 Cal.App.5th 469, 478 [felons are not within the class of people afforded rights under the Second Amendment]; *People v. Odell* (2023) 92 Cal.App.5th 307, 317 [same]; and *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1300 [same]; with *Anderson, supra,* 104 Cal.App.5th at p. 588, ["We see no basis for categorically excluding persons with prior felony convictions from the protections of the Bill of Rights."].) We do not address that issue because for the purposes of this appeal, we will assume without deciding that felons are included within the class of persons with Second Amendment rights.

they were unwilling to respect sovereign authority, *and* they were disarmed as a sanction for criminal conduct, *whether or not involving physical violence.* California's felon disarmament measures are ' "relevantly similar" ' in serving both of these purposes." (*Anderson, supra,* 104 Cal.App.5th at p. 598 second italics added; see also, *United States v. Jackson* (8th Cir. 2024) 110 F.4th 1120, 1128 ["Not all persons disarmed under historical precedents . . . were violent or dangerous persons"]; *United States v. Hunt* (4th Cir. 2024) 123 F.4th 697, 707 ["legislatures historically had the power to disarm categories of people based on a legislative determination that such people 'deviated from legal norms,' and 'not merely to address a person's demonstrated propensity for violence.' "].)

Nor does Duran's completion of his sentence and probation render sections 29800 and 30305 unconstitutional as applied to him. "[H]istorically, disarmament as a criminal penalty" was not always temporary. (*Anderson,* at p. 598.) Our country's legal tradition includes "categorical disarmament laws impos[ing] permanent prohibitions" that "are not inconsistent with the Second Amendment." (*Id.* at p. 598; see also, *United States v. Duarte, supra,* 137 F.4th at p. 761 ["permanent and categorical disarmament of felons is consistent with this Nation's historical tradition of firearm regulations"]; *United States v. Diaz* (5th Cir. 2024) 116 F.4th 458, 471 ["Imposing permanent disarmament as a punishment is also within our Nation's history and tradition."].)

Accordingly, despite the circumstances of Duran's prior felony and current firearm possession, enforcing section 29800, subdivision (a)(1), and section 30305, subdivision (a)(1), against Duran is "consistent with the principles that underpin" this nation's "regulatory tradition." (*United States v. Rahimi, supra,* 602 U.S. at p. 681.) California's felon dispossession laws

7

are therefore constitutional as applied to Duran,[4] so he is unable to establish the prejudice prong of his ineffective assistance of counsel claim.

B.      *Duran Is Not Entitled to a Jury Determination on the Application of Section 654 or the Reduction of the Evading Offense to a Misdemeanor*

Duran asserts his due process and jury trial rights were violated when the trial court, rather than the jury, determined that counts 2 and 3 involved discrete acts under section 654. Duran similarly claims that his jury should have been instructed on and determined whether his evading offense was a misdemeanor or felony under section 17. We disagree.

1.      Standard of Review

Duran's claims raise questions of law, which we independently review. (*People v. Scott* (2016) 3 Cal.App.5th 1265, 1271.)

2.      Section 654

Section 654 precludes multiple punishments for a single act or indivisible course of conduct punishable under more than one criminal statute. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267.) "[W]hen a trial court determines that section 654 applies to a particular count, the trial

---

4      We find unpersuasive Duran's reliance on *Range v. AG United States* (3d Cir. 2024) 124 F.4th 218, in which the Third Circuit found a similar federal dispossession statute (18 U.S.C. § 922(g)(1)) unconstitutional as applied to an individual who had completed probation after suffering a conviction for making a false statement to secure food stamps. *Range* involved a nonviolent misdemeanant, distinguishing it from Duran's circumstances which include felonies. Further, we agree with the cases holding that permanently disarming felons, including nonviolent ones, is consistent with our country's history. (See, e.g., *Anderson, supra,* 104 Cal.App.5th at pp. 598–599; *United States v. Jackson, supra,* 110 F.4th at pp. 1127–1128; *United States v. Hunt, supra,* 123 F.4th at pp. 706–707; *United States v. Duarte, supra,* 137 F.4th at pp. 756-762.)

court must impose sentence on that count and then stay execution of that sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.)

      3.     <u>Wobblers</u>

Relevant here, the legislature has defined some felonies as " 'wobblers.' " (*People v. Park* (2013) 56 Cal.4th 782, 789.) Wobblers are crimes that can be punished either by a state prison sentence or incarceration in county jail. (*Ibid.*; see also, § 17, subd. (b).) Under certain circumstances "Penal Code section 17, subdivision (b) gives the trial court discretion to *reduce* certain felonies . . . to misdemeanors." (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611, italics added.) In this instance, "[t]he purpose of the trial judge's sentencing discretion to *downgrade* certain felonies is to 'impose a misdemeanor sentence in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon.' " (*People v. Tran* (2015) 242 Cal.App.4th 877, 886, italics added (*Tran*).)

      4.     <u>Analysis</u>

          i) Section 654

Duran argues the section 654 determination is a jury's responsibility because a decision about whether charges are subject to section 654's ameliorative effects results from fact finding no longer allowed post-*Erlinger*. (See *Erlinger v. United States* (2024) 602 U.S. 821, 834.) Duran relies on the principal that "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt." (*Ibid.*; see also, *People v. Lynch* (2024) 16 Cal.5th 730, 742.) We are unpersuaded. That principle is inapplicable to the statutory prohibition on double punishment described in section 654. " ' "[S]ection 654 is not a sentencing 'enhancement.' On the

contrary, it is a sentencing 'reduction' statute" ' " which, therefore, does not implicate the Sixth Amendment prohibition against judicial fact finding to increase criminal sentences. (*People v. Carter* (2019) 34 Cal.App.5th 831, 846.) Here, "every factual element of the [firearm and ammunition possession] was submitted to the jury, and the jury found [Duran] guilty beyond a reasonable doubt of both crimes. Thus, the jury's verdict authorized the sentences [Duran] received for each crime. Indeed, in finding section 654 did not apply, [Duran] received the *same* sentence as he was exposed to by the jury's verdict." (*People v. Cleveland, supra,* 87 Cal.App.4th at p. 270.)

ii.) The Wobbler

The legislature has determined that a person convicted of Vehicle Code section 2800.2, subdivision (a), "shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year." Since the court can sentence a defendant to either state prison or county jail, Vehicle Code section 2800.2 is a wobbler. (*People v. Statum* (2002) 28 Cal.4th 682, 685 (*Statum*).)

Duran argues that since section 2800.2 can be reduced to a misdemeanor, then just like a lesser included offense, a jury must decide whether under section 17, subdivision (b)(1), the charge should be treated as misdemeanor and not a felony. As with his discussion of section 654, *ante*, Duran relies on *Erlinger* and the Sixth Amendment to press this claim. Again, we disagree.

By rendering a guilty verdict on the felony evading charge, the jury found every factual element of that offense beyond a reasonable doubt. Section 17, subdivision (b), merely authorized the trial court to downgrade the offense to a misdemeanor and reduce the sentence authorized by the jury's verdict if the court determined Duran's " 'rehabilitation . . . [did] not

10

require, or would be adversely affected by, incarceration in a state prison as a felon.' " (*Tran, supra*, 242 Cal.App.4th at p. 886.)

We also reject Duran's assertion that a misdemeanor violation of Vehicle Code section 2800.2 is a lesser included offense of a felony violation of that statute, entitling Duran to both misdemeanor and felony jury instructions. In support, Duran cites *Statum*, in which the California Supreme Court stated, "[o]ur case law has consistently treated the misdemeanor as a lesser offense than the felony wobbler." (*Statum, supra*, 28 Cal.4th 682 at p. 689.) But that case concerned section 1238(a)(6), which "authorizes the People to take an appeal from '[a]n order . . . modifying the offense to a lesser offense.' " (*Statum, supra*, 28 Cal.4th 682 at p. 688.) The Supreme Court did not consider whether a wobbler treated as misdemeanor constituted a lesser included offense of the same violation when treated as a felony. "Cases are not authority, of course, for issues not raised and resolved." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 943.) Further, the high court confirmed that the term "lesser offense" has a broader meaning than "lesser *included* offense." (*Statum*, at p. 692.)

Contrary to Duran's claims, a violation of Vehicle Code section 2800.2, subdivision (a), is a single crime with one set of elements. Section 17 does not create separate offenses for wobblers. Instead, it simply allows those offenses to be "chargeable or, in the discretion of the court, punishable" under different classifications. (*People v. Park, supra,* 56 Cal.4th at p. 789.) Accordingly, there is no lesser and greater offense within Vehicle Code section 2800.2 that the jury could have been instructed on.

Based on the foregoing, the trial court did not violate Duran's due process and jury trial rights by determining the application of section 654 or whether to classify the evading offense as a misdemeanor.

11

*C.* *The Trial Court Did Not Abuse its Discretion in Denying Duran's*
*Motion to Dismiss His Prior Strike*

Duran argues the trial court abused its discretion in denying his
*Romero* motion. Duran contends his prior strike should have been dismissed
because he committed it when he was 20, and he had been crime free for
almost a decade. Duran also asserts that the trial court improperly penalized
him for maintaining sobriety, speculated about his involvement in an
uncharged murder, and inaccurately characterized his criminal history and
lack of remorse. We disagree.

1. <u>Additional Background</u>

In assessing Duran's *Romero* motion, the trial court summarized
Duran's criminal history. Consistent with the probation officer's report, the
trial court noted that Duran's juvenile offenses included a 2009 residential
burglary during which he acted as a lookout, a 2010 resisting an officer which
occurred after being arrested for public intoxication, and a 2011 assault with
a deadly weapon with a gang allegation committed while attempting a
robbery with several companions. Turning to Duran's prior offenses as an
adult, the trial recounted that in 2012, Duran pleaded guilty to a disturbing
the peace infraction after fleeing with a codefendant from police responding
to a vehicular burglary, and in 2013, he pleaded guilty to misdemeanor
burglary that also involved fleeing from the police with codefendants. As for
the prior strike, the trial court stated that Duran drove under the influence of
alcohol, struck a pedestrian causing significant injuries, and left on foot with
his passengers.

Regarding the charged offenses, the trial court determined that Duran
lied about the evasion charge. Noting that "[t]here's nothing to suggest that
he was involved in the homicide" committed from the RAV4, the court found

12

Duran was nonetheless involved in a potential coverup because he drove someone to that car with cleaning products, fled when he realized law enforcement was present, and tried to dispose of the key to the RAV4. Compounding his culpability, according to the trial court, Duran then led the police on a dangerous 21-mile chase. The court further noted that when apprehended, Duran was neither apologetic nor "concerned about the community." The court found this to be "antisocial behavior [evincing] a lack of concern or care for the well-being of anyone on the road." The trial court similarly found that Duran's denial of the possession charges was not credible, and those offenses were inconsistent with a law-abiding life.

On the mitigating side, the trial court acknowledged that Duran completed probation on his prior strike, avoided convictions for the ensuing 9 years, started his own business, and had many people supporting him. But the trial court found those circumstances outweighed by Duran's conduct in the current offenses, noting that Duran has a propensity for committing crimes with others and fleeing from the police. The trial court also stated that because Duran's offenses do not appear to be fueled by substance abuse, treatment would not address Duran's problems.

Ultimately, the trial court concluded that Duran fell within the spirit of the "Three Strikes" law and declined to dismiss his strike as to count 1. However, the trial court struck the strike as to counts 2 and 3 based on the mitigating circumstances favoring Duran, including the age of the strike, his constructive possession of the gun and ammunition, and the dissimilarity between the strike and the possession offenses.

2. The Trial Court's Discretion to Dismiss a Prior Strike

The Three Strikes law restricts a court's discretion in sentencing repeat offenders. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) It " 'establishes a

sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made." ' " (*Ibid.*)  In making that determination, " 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Ibid.*)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony, supra*, 33 Cal.4th at p. 374.)  The circumstances justifying departure from the Three Strikes law must be extraordinary, and an abuse of discretion in this regard is even more extraordinary. (*People v. Vargas* (2014) 59 Cal.4th 635, 641.)

    3.    <u>Analysis</u>

We agree with Duran that his youth when he committed the strike and his lack of convictions in the following nine years weigh in favor of dismissing his strike. (See, e.g., *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141.)  But the trial court did not exceed the bounds of reason in finding that the circumstances of the current offenses and Duran's criminal history outweighed the mitigating factors as to count 1.  Further, the trial court sided with Duran in dismissing his strike as to counts 2 and 3.

As for Duran's sobriety, the trial court did not penalize Duran as he suggests.  Instead, the trial court reasonably found that treatment was not feasible because Duran's crimes were not related to substance abuse.  We also

14

disagree that the trial court speculated about Duran's involvement in the RAV4 murder. Based on the evidence at trial, the trial court had a sufficient basis to conclude that Duran was assisting the people who committed the crime. Nor do we see any improper characterization of Duran's criminal record, as the trial court's recitation of Duran's prior offenses is consistent with the probation officer's report. Finally, the trial court did not mention remorse when ruling on the *Romero* motion. The court merely said it "heard nothing to that effect" when stating it would have denied probation even if Duran did not have a prior strike.

Under these circumstances, Duran has failed to show that no reasonable person could agree with the trial court's decision. We therefore see no abuse of discretion in the trial court's refusal to dismiss Duran's prior strike.

D.    *Duran's Sentence on Count 3 and His Custody Credits Must be Corrected*

The People concede that the trial court erred in imposing punishments for both counts 2 and 3. "As [Duran] points out, the only ammunition was that in the pistol, so possessing the firearm and possessing the ammunition inside were one 'act' within the meaning of section 654." (*People v. Wright* (2025) 113 Cal.App.5th 832, 846; see also, *People v. Lopez* (2004) 119 Cal.App.4th 132, 138.) The trial court therefore should have imposed and then stayed Duran's sentence on count 3.

Duran contends this error requires resentencing because without it, the trial court may have imposed a lesser sentence or dismissed the strike as to count 1. This claim is unsupported by the record. There is no indication that had the court stayed the sentence on count 3 instead of imposing it concurrently, the trial court would have exercised its sentencing discretion

15

differently.  Accordingly, to correct the sentence and avoid the unnecessary expense of producing Duran for a sentencing hearing that will not change his actual prison time, we exercise our authority to modify the judgment by staying the execution of Duran's sentence on count 3.  (*People v. Alford, supra,* 180 Cal.App.4th at p. 1473; § 1260.)

Additionally, as the People concede, Duran is entitled to one additional day of custody credit because the trial court did not award Duran any credit for the day of sentencing.  The abstract of judgment must therefore be amended to reflect that Duran has two days of custody credits.

## IV. DISPOSITION

The judgment is modified by staying the sentence imposed on the ammunition possession count and awarding Duran an additional day of custody credit.  The trial court shall amend the abstract of judgment accordingly and shall forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

RUBIN, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.

16